UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEVEN B. DOTY,
      Plaintiff                       Civil Action No. 07-13183

v.
                                   District Judge Victoria A. Roberts
                                   Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Steven Doty brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income under the Social Security Act.  Both parties have filed motions for summary judgment [Docket #9, 13] which have been referred for Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend  that Plaintiff's Motion for Summary Judgment be GRANTED under Sentence Four to the extent that the matter is remanded  for further fact-finding; DENIED as to his request for an award of benefits; and DENIED as to his request for a Sentence Six remand.  I recommend that Defendant's Motion for Summary Judgment be DENIED.


## PROCEDURAL HISTORY

On June 24, 2003, Plaintiff's mother, Judy Doty, filed an application for Supplemental Security Income on behalf of Plaintiff, alleging disability as of birth on June 5, 1984 (Tr. 58). After the initial denial of benefits, Plaintiff requested an administrative hearing, held before Administrative Law Judge ("ALJ") Joel B. Martinez in Detroit, Michigan on June 13, 2006 (Tr. 646). Plaintiff, represented by counsel, testified, as did Mental Health Expert ("MHE") Sidney Walter, Ph.D., and Vocational Expert ("VE") Samuel I. Goldstein, Ph.D. (Tr. 649-669, 669-673, 674-679). On September 18, 2006, ALJ Martinez found that Plaintiff was not disabled (Tr. 27). On July 7, 2007, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review on July 31, 2007.

## BACKGROUND FACTS

Plaintiff, born June 5, 1984, was 22 when ALJ Martinez issued his decision (Tr. 58). He left high school before graduating and performed part-time work at a Subway restaurant (Tr. 26). He alleges disability as a result of attention deficit-hyperactivity disorder ("ADHD"), emotional impairments, migraine headaches, asthma, and allergies (Tr. 104).

### A. Plaintiff's Testimony

Plaintiff testified that he currently lived in Woodhaven, Michigan at his mother's house (Tr. 650). He stated that he held a valid driver's license and denied a criminal record (Tr. 651). He reported that his job duties at Subway included cutting vegetables, making bread, and greeting customers, adding that he had worked on a part-time basis only (Tr. 652). Characterizing his position as that of a "humble employee," he testified that he had been

offered a manager's position but had turned it down because he was then in school (Tr. 653). He indicated that his tenure with Subway was marked by his "bad judgment," including his failure to "take the soup off the pot" when closing the store for the night and time management problems (Tr. 665). He alleged that he was eventually terminated because he was "accident-prone" (Tr 656). Plaintiff stated that until two months before the hearing, he had attended a vocational school for the mentally impaired, but quit because the program failed to teach him "the things [he] needed to know" (Tr. 655). He reported that he was currently looking for a job in food preparation or stocking (Tr. 656).

Plaintiff testified that he attended special education classes while in school (Tr. 656-657). He denied current problems with illegal substances, but acknowledged that he used to smoke marijuana (Tr. 657). He reported only rare alcohol use (Tr. 657). Plaintiff testified that he experienced asthma, but denied that breathing problems or any other physical condition would interfere with work (Tr. 657-658). He alleged mood swings, including anger management problems (Tr. 659). He indicated that he currently received mental health treatment and took Concerta, Prozac, Risperidal, and Catapres (Tr. 659-660). He reported that he was occasionally non-compliant with his medication, resulting in a migraine headache the following day (Tr. 661). He estimated that despite medication, he experienced "an angry mode" at least once a month, characterized by verbal (but not physical) abuse (Tr. 661).

Plaintiff reported that he had been hospitalized two months earlier after passing out as a result of an accidental overdose of Xanax, indicating further that he was generally accident prone (Tr. 663, 667). Stating that he was "interested in working on cars," Plaintiff

testified that his pastimes also included playing video games, fishing, biking, and collecting knives and swords (Tr. 668).

### B.  Medical Expert

Based on Plaintiff's testimony, Dr. Walters found that Plaintiff experienced poor impulse control and symptoms of a bipolar condition "well controlled with medication" (Tr. 670). Dr. Walters found further that Plaintiff's drug use had "been decreased to the point that it's no longer a critical factor," disagreeing with treating physician LeCombe's finding of marked limitations (Tr. 670). The MHE noted that Plaintiff had performed "exceptionally well" in vocational school (Tr. 671). He found that Plaintiff experienced mild restrictions in daily living; mild to moderate social limitations; and moderate limitations in concentration, persistence, and pace (Tr. 672). The MHE also rejected treating psychiatrist Mahal's finding of extreme limitations, noting that Plaintiff had been working, attending school with "outstanding" results, and "getting along with most people" (Tr. 673).

### C.  Medical Records

#### 1.  Treating Sources

December 1997 treating notes indicate that Plaintiff was taking Ritalin (Tr. 195). In April 1999, Surgit Mahal, M.D., found that Plaintiff experienced hyperactivity marked by a poor attention span (Tr. 263-264). In November 1999, an academic evaluation found that Plaintiff was "at risk" for aggression and depression, as well as problems in learning, social functioning, leadership, and study skills (Tr. 239). Treating notes from February 2000

indicate that he was also prescribed Concerta (Tr. 168). In March 2002, an evaluation by a school psychiatrist noted that Plaintiff possessed average reading comprehension skills but was "well below average" in numerical operations (Tr. 382). Plaintiff was deemed eligible for special education on the basis of emotional impairments, but a report from the same month indicates that his attendance record had improved and depressive episodes had decreased (Tr. 275).

In May 2002, an evaluator noted Plaintiff "continues to exhibit significant levels of depression" (Tr. 271). Psychologist James A. LaCombe, Ph.D., found that despite a significant improvement in symptoms of ADHD, Plaintiff continued to experience severe depression (Tr. 299). The same month, Plaintiff received sutures for a laceration to the right hand (Tr. 154, 156). Vocational school notes for the 2002-2003 school year show that Plaintiff's ability to "stay on-task at work station" and the "performance of vocational skills in a . . . classroom" was satisfactory (Tr. 265). Plaintiff received either satisfactory or outstanding scores in a December 2002 assessment of his work skills (Tr. 296). Plaintiff's ability to perform multi-step tasks was deemed "high" (Tr. 295). March 2003 treating notes by Dr. Mahal indicate that Plaintiff reported doing well (Tr. 202). Notes created in April 2003, state that Plaintiff was "doing better" (Tr. 200). However, the same month, Dr. LaCombe, noting episodes of grandiosity, urged Dr. Mahal to consider a diagnosis of Bipolar Disorder (Tr. 289, 291). The same month, Plaintiff sought emergency treatment after experiencing medication side effects including nausea, cold sweats, and a backache (Tr. 302). Dr. LaCombe noted in March 2004 that Plaintiff's "mood is brighter, affect appropriate,"

but appeared anxious and constricted at a September 2004 session (Tr. 452, 464, 465).

In March 2004, Dr. LaCombe composed an opinion letter on behalf of Plaintiff's disability application, noting Plaintiff had been hospitalized at the age of 14 for severe depression (Tr. 286). Dr. LaCombe noted that although he had improved since undergoing treatment, he currently experienced manic episodes characterized by "extreme irritability and grandiosity . . . . almost to the point that his thoughts are delusional" (Tr. 287). Opining that "[i]t is extremely unlikely that he will ever be able to support himself financially by working at a job," Dr. Lacombe assigned Plaintiff a GAF of 50[1] (Tr. 287). In July 2004, Plaintiff was admitted to the hospital for psychiatric observation after reporting thoughts of suicide following his girlfriend's announcement that she intended to have an abortion (Tr. 610). Observation notes state that he "continued to show progress to the extent . . . he was not showing any suicidal or homicidal thoughts, ideations, or plans" over the course of his six-day stay (Tr. 610). Emergency room notes indicate the absence of hallucinations or delusions (Tr. 606). Observation notes also state that Plaintiff "was relevant, coherent and in touch with reality" (Tr. 610). Dr. Mahal assigned Plaintiff a GAF of 50-55 (Tr. 611).

September 2004 treating notes indicate that Plaintiff sprained his left arm along with a laceration of the left hand (Tr. 372, 568, 622). Imaging studies showed the absence of a dislocation or fracture (Tr. 628). In November 2004, Plaintiff sought emergency treatment

---

[1]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* ) (4th ed.2000).

for elevated blood pressure and lightheadedness (Tr. 596). At a January 2005 therapy session, Plaintiff expressed anger over his recent job termination (Tr. 446). In May 2005, he reported sleeping difficulties to Dr. LaCombe, noting that a job search had been unsuccessful (Tr. 437, 438). The same month, Dr. Mahal noted that Plaintiff continued to take his medication without side effects (Tr. 384, 515).

In July 2005, Plaintiff sought treatment after twisting his ankle (Tr. 365). Imaging studies showed no evidence of a fracture or dislocation (Tr. 365, 562). Treating notes show that Plaintiff was admitted to the psychiatric ward at Henry Ford Wyandotte Hospital after his mother reported that he was depressed and hallucinating (Tr. 588). Dr. Mahal noted that Plaintiff showed progress over the course of his six-day stay, including "no suicidal or homicidal thoughts or mood swings (Tr. 588). Dr. Mahal assigned him a GAF of 55, noting that Plaintiff's Bipolar disorder, "mixed, depressed with psychotic features" was in remission (Tr. 589).

In September 2005 treating notes show that Plaintiff sought emergency treatment for lightheadedness (Tr. 427). In October 2005, Plaintiff tested positive for an overdose of benzodiazepines after exhibiting drowsiness and hallucinations (Tr. 581). November 2005 correspondence by Ravinder Gandhi, M.D., states that Plaintiff appeared "to have a sleep disorder," but testing the following month found the absence of Obstructive Sleep Apnea (Tr. 491, 507). Dr. Gandhi noted that Plaintiff had been taken to the hospital after being observed on his "feet and elbows . . . growling and barking" but upon examination had no memory of events and was "cooperative, alert and oriented"(Tr. 480, 573-574). December 2005 therapy

notes state that Plaintiff "continues to be isolated, lethargic, [and] unproductive" (Tr. 418).

In May 2006, Dr. Mahal completed a mental health care questionnaire on behalf of Plaintiff's disability application, stating that Plaintiff experienced mood swings, episodic hallucinations, withdrawal, and poor judgment (Tr. 498). Dr. Mahal found that Plaintiff's depressive symptoms were characterized by loss of interest, appetite disturbance, sleep disturbance, agitation, decreased energy, feeling of guilt, difficulty concentrating, thoughts of suicide, and hallucinations as well as multiple symptoms of a manic syndrome (Tr. 498). Dr. Mahal found that Plaintiff experienced marked daily living, social, and concentrational limitations with "[r]epeated episodes of decompensation," finding uniformly "extreme" work-related limitations (Tr. 499). Dr. Mahal concluded his questionnaire assessment by finding that Plaintiff's mental impairments would "never" cause him to be absent from work, along with the statement that he had "not seen [Plaintiff] functioning at home, school, community" in over eight years (Tr. 501).

The same month, Dr. LaCombe found that as a result of Plaintiff's Bipolar Disorder, he experienced multiple symptoms of depression and mania (Tr. 534-535). He found further that Plaintiff experienced extreme concentrational, and work-related limitations with the exception of moderate to marked limitations in the ability to remember and carry out simple one or two-step instructions and marked to extreme limitations in maintaining sustained concentration and attention (Tr. 536).

### 2. Consultive and Non-examining Sources

In September 2003, psychologist Beth Clevenger performed a mental evaluation of Plaintiff (Tr. 314-320). Noting that Plaintiff had been admitted to the hospital following an accidental overdose, Dr. Clevenger observed that Plaintiff currently took Concerta and Prozac and saw a psychologist weekly and a psychiatrist monthly (Tr. 315). Plaintiff denied current use of Cannabis or any problems with the law (Tr. 315). Dr. Clevenger noted that Plaintiff demonstrated "adequate contact with reality and good self esteem," but was "fidgety" (Tr. 316). Plaintiff denied feeling depressed (Tr. 317). Intelligence testing was in the low average range with "weaknesses in his arithmetic ability" (Tr. 319). Deeming Plaintiff's prognosis "fair," Dr. Clevenger assigned him a GAF of 55[2] (Tr. 320).

In October 2003, H. C. Tien, M.D., completed a Psychiatric Review Technique ("PRT") finding that Plaintiff experienced both affective and substance abuse disorders (Tr. 334, 337, 342). Under the "B" Criteria of Listings, Dr. Tien found that Plaintiff experienced mild restrictions in daily living and social functioning with moderate difficulties in maintaining concentration, persistence, or pace (Tr. 344). The same day, Dr. Tien performed a Mental Residual Functional Capacity Assessment, finding that Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, and set realistic goals were moderately limited (Tr. 331-332). Dr. Tien concluded that Plaintiff was "[c]apable of doing a wide range of unskilled work in spite of [affective

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school function. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders –Text Revision* at 34 (*DSM-IV-TR*), 30 (4th ed.2000).

and substance abuse] disorders (Tr. 333).

October 2003 notes from a consultive physical examination performed on behalf of the SSA, reference Plaintiff's history of chronic bronchial asthma and migraine headaches, but indicate otherwise normal findings (Tr. 347-348). An undated Physical Residual Functional Capacity Assessment (presumably from the same period as the consultive exam) found the absence of exertional, postural, manipulative, visual, communicative, or environmental limitations (Tr. 323-327). The Assessment concluded by noting that Plaintiff cooked, shopped, played video games, and swam, finding allegations of limitation only "partially" credible (Tr. 328).

### D. VE Testimony

VE Samuel I. Goldstein classified both Plaintiff's high school and vocational school instruction as special education (Tr. 674). He found that Plaintiff's past relevant work as a fast-food worker was unskilled at the light exertional level [3] (Tr. 675). The ALJ posed the following hypothetical question, taking into account Plaintiff's age, educational level, work experience, and the absence of exertional limitations:

> "no concentrated fumes, dust, odors, and gasses, simple work and limited contact with the public and peers (sic). Assuming that the fast-food worker

---

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

occupation was viable, would this hypothetical person be able to perform that?"

(Tr. 675).  VE testified that given the above limitations, the individual would be unable to perform fast-food work, but could perform the jobs of a packager (8,000 to 10,000 positions existing in the tri-county area), assembler (20,000), and office clean-up worker (15,000)(Tr. 676).

In response to questioning by Plaintiff's attorney, the VE testified that extreme concentrational limitations, absenteeism of a rate greater than once a month, "probable mental decompensation under the stress of a full-time job in a non-sheltered environment," or a marked limitation in the "ability to travel unaccompanied" would  would preclude all work (Tr. 678).

### E.   The ALJ's Decision

ALJ Martinez found first that Plaintiff's part-time work at Subway did not qualify as substantial gainful activity (Tr. 18).  He next determined that although Plaintiff's conditions of asthma, a learning disorder, a depressive disorder, history of polysubstance abuse, ("including  alcohol and cannabis") and history of abuse of prescription medications were severe impairments based on the Regulations in 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926) (Tr. 19).

The ALJ determined that  Plaintiff retained the  residual functional capacity ("RFC")

to perform simple work with "limited contact with public and peers," and avoidance of "concentrated exposure to fumes, dust, odors, or gases" (Tr. 19). Adopting the VE's job numbers, the ALJ found that Plaintiff could perform the work of a packager, assembler, and office cleaner (Tr. 26). The ALJ found Plaintiff's allegations of disability "not entirely credible," noting that he worked part-time, used a computer for research, worked with electronics, and did well in vocational school (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has

been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes multiple arguments for remand. First, he contends that because his mother was not permitted to testify at the hearing, his due process right to a full and fair hearing was violated. *Plaintiff's Brief* at 43, *Docket #9.* On a related note, he argues that this

right was also compromised by the poor sound quality of the MHE's telephonic testimony. *Id.* at 45.

Second, Plaintiff contends that substantial evidence does not support the ALJ's Step Three finding of non-disability, making a third, overlapping argument that the ALJ impermissibly discounted the findings of his treating physicians supporting a disability finding at Step Three. *Id*. at 48-56. Fourth, Plaintiff argues that the ALJ erred by rejecting his own allegations of limitation, noting that his claims were well-supported by statements by his mother and his girlfriend (Tr. 57). Plaintiff argues fifth that the ALJ's choice of hypothetical limitations did not reflect his true degree of limitation, thus invalidating the VE's job findings. *Id.* at 60. Finally, Plaintiff argues that he is entitled to a Sentence Six remand on the basis of his mother's "new and compelling" deposition testimony submitted after the issuance of the administrative decision. *Id*. at 62.

## A. A Full and Fair Hearing

Plaintiff argues first that he did not receive a full and fair hearing. *Plaintiff's Brief* at 43-47. His counsel contends that the ALJ posed result-oriented questions, "effectively obtaining the testimony he wished to obtain to support a denial of benefits." *Id*. at 44. Counsel alleges further that the ALJ violated Plaintiff's due process rights by refusing to let mother testify. *Id.* Plaintiff also complains that MHE's telephonic testimony "was lost or severely compromised" by poor sound quality, compromising the "responsiveness" of the his testimony as well counsel's opportunity for cross-examination. *Id*. at 45. Plaintiff also

argues that the ALJ showed "extreme prejudice," arguing that if remanded for further hearings, the case should be reassigned to a different ALJ. *Id.* at 47, 63.

Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts." *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (C.A.Tenn.,1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971). Here, a review of the June 2006 transcript shows that ALJ Martinez conducted a procedurally and substantively adequate inquiry into Plaintiff's condition (Tr. 649-669). Although Plaintiff's counsel contends that the ALJ "prompt[ed]" her client to agree that he would not threaten people, this question, read in context, was simply requesting a clarification of Plaintiff's comment he "would go off on customers" at work (Tr. 658, 662). "[W]here the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings, however, in the present case, because Plaintiff was in fact represented by counsel at the latest hearing, no such heightened duty existed. *Id.; Smith v. Harris,* 644 F.2d 985, 989 (3d Cir.1981).

On a related note, I disagree with Plaintiff's argument that the sound quality of the MHE's telephonic testimony compromised his right to a fair hearing. Instead, the transcript indicates that sound quality problems amounted at most to an inconvenience requiring the ALJ, witness, and counsel to repeat questions and/or findings (Tr. 671-672). Although Plaintiff also notes that the transcript indicates that the court reporter (transcribing the hearing testimony at a later time) was unable to make out every word of testimony, the transcriber's

-15-

inability to make out portions of the recording does not indicate that counsel (present at the hearing) was similarly unable to follow the testimony. More obviously, although Plaintiff's counsel argues that her right to cross-examine the MHE was undermined by sound problems, the transcript is devoid of any statement indicating that she believed at that time that her client's rights were being compromised. Likewise, counsel's Appeals Council submission is absent this claim, indicating that this claim has remained unraised until now.

I further disagree that Plaintiff's due process rights were violated by ALJ Martinez's refusal to let Plaintiff's mother testify. The ALJ reasonably noted that her testimony was unnecessary, given the testimony of the MHE and records by multiple long-term treating sources (Tr. 680). Further, the ALJ permitted Plaintiff's mother to submit a letter stating her reasons for believing that her son was disabled, and discussed her allegations at length in the administrative opinion (Tr. 24, 146, 681).

Finally, I disagree with Plaintiff's argument that if remanded, the case should be assigned to a different ALJ. Neither the hearing transcript nor the administrative decision supports Plaintiff's allegations of judicial bias. While "[t]he right to a trial by an impartial decision maker is a basic requirement of due process," (*In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)), the courts do not lightly conclude that a judicial bias claim has been established. *United States v. Microsoft Corp.,* 56 F.3d 1448, 1463 (D.C.Cir.1995). The presumption that the judicial officer is unbiased can be rebutted by showing that the he "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible;" however even "expressions of impatience, dissatisfaction,

annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display" do not establish bias. *Liteky v. United States,* 510 U.S. 540, 555-556, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Even assuming for the sake of argument that the ALJ actually showed signs of impatience or boredom, nothing in the record suggests that the administrative process was tainted by bias. The fact that Plaintiff is unhappy with the outcome does not merit reassignment to a different ALJ.

### B. Treating Physician Analysis and Step Three Determination

Plaintiff argues next that the ALJ erred at Step Three of the administrative analysis. *Plaintiff's Brief* at 48. Specifically, Plaintiff contends that his Bipolar Disorder, "considered either singly or in combination with his co-existing Learning Disability, meets or equals" Listing 12.04 (affective disorders). *Id.* He makes the related argument that the ALJ impermissibly rejected the opinions of treating sources Drs. Mahal and LaCombe. *Id.* at 51. He contends that if these opinions had been rightfully credited, he would have been found disabled under the listing. *Id.*

Because Plaintiff's argument for disability under Listing 12.04 is based on the opinions of his treating sources, the Court must first determine whether the ALJ was entitled to reject Drs. Mahal and LaCombe's finding of almost uniformly marked and extreme limitations. If a treating physician's opinion is accorded less than controlling weight, the ALJ must consider "the length of the treatment relationship . . . the frequency of examination, the nature and extent of the treatment relationship, [the] supportability of the opinion, consistency of the

opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004);20 C.F.R. §404.1527(d)(2). Further, the "ALJ must 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2).

Despite the deference generally accorded a treating source opinion, the ALJ is not obliged to adopt largely unsupported findings. Here, substantial evidence easily supports the ALJ's rejection of Drs. Mahal and LaCombe's findings of extreme mental impairments in the questionnaires provided by Plaintiff's counsel. In compliance with *Wilson, supra*, the ALJ permissibly rejected Dr. Mahal's May 2006 findings that Plaintiff experienced consistently extreme limitations by noting that "progress reports and school reports . . . indicate that [Plaintiff] does well when he is on his medication" (Tr. 25). The ALJ also noted that Dr. Mahal's findings contradicted September 2003 consultive examination results which noted that Plaintiff 's responses were "spontaneous and well organized," noting further that he was able to clean, shop, cook, and enjoy good relations with neighbors and classmates (Tr. 316). The ALJ also found that in rejecting Dr. Mahal's findings, the treating physician "did not factor in" that Plaintiff's more extreme behavior was the result of drug abuse (Tr. 25).

The rejection of Dr. LaCombe's findings are similarly well supported. The ALJ aptly noted that Dr. LaCombe's assessment stood at odds with other portions of the record:

> "For instance, [Dr. LaCombe] rated [Plaintiff] extremely impaired in the ability to respond to work pressures five days a week in a routine work setting and in traveling unaccompanied outside the living environment, when [Plaintiff] already showed that he could work for Subway three to four days a week in

addition to attending prevocational school five days a week"

(Tr. 25).  Instead, the ALJ adopted the September 2003 consultive examination results, PRT, and the testimony of the MHE, noting that these findings accurately reflected  school and vocational records, as well as Plaintiff's own testimony [4] (Tr. 25).

For overlapping reasons, substantial evidence also supports the ALJ's determination that Plaintiff's condition did not meet or equal listing 12.04.  Assuming for argument's sake that the great weight of evidence showed that Plaintiff experienced a degree of limitation as a result of multiple symptoms of an Affective Disorder and a Bi-Polar Disorder under the "A" criteria (Tr. 337), this finding must be accompanied by "B" criteria findings  including "marked" deficiencies in   activities of daily living, maintaining social functioning, or concentrational deficiencies (Tr. 344).  Plaintiff's argument for disability under the listings is   based on Dr. Mahal and LaCombe's findings of marked and extreme limitations.  However, because the ALJ  rejection of these findings is well supported, he was entitled to omit them from his Step Three analysis.[5]

_____

[4]I also disagree with Plaintiff's contention that the ALJ erroneously attributed hallucinations and other bizarre behavior to drug use rather than an organic disorder. *Plaintiff's Brief* at 53 *citing to* Tr. 24.  Plaintiff's October 2005 hospitalization records show that he exhibited drowsiness and hallucinations as a result of an overdose of benzodiazepines (Tr. 581).  On other occasions in which Plaintiff tested negative for drugs, Plaintiff was hospitalized based on his mother's claim that he had been hallucinating.  However, upon examination, treating staff found him "oriented X3," with a "normal affect, insight, [and] concentration" and/or  responded well to treatment (Tr. 574, 588).

[5]In support of the argument for a Step Three finding of disability Plaintiff's counsel also cites  from the transcript of a July 11, 2006 deposition by Plaintiff's mother.  However, as discussed in Section **E**., *infra*, because this evidence was submitted after the administrative

## C.  Credibility

Plaintiff submits next that the ALJ erred in discounting his allegations of limitation and the statements of his mother and girlfriend. *Plaintiff's Brief* at 57.  Conceding further that his reports of migraine headaches and a sleep disorder could be "psychosomatic," Plaintiff contends that the ALJ was nonetheless required to consider these complaints.  *Id.* at 58-59.

The  latitude generally ceded to an ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see also Richardson, supra*, 402 U.S. at 401. An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir. 1989); *citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986).

The record easily supports the ALJ's credibility finding.  First, although Plaintiff alleged migraine headaches, asthma, and allergies, the ALJ noted that aside from negative results from objective testing, there was a dearth of evidence showing that these conditions significantly impaired his work abilities (Tr. 19, 23).  Although Plaintiff argues that the ALJ erred in discounting the statements of his mother and former girlfriend, the administrative discussion of this evidence is substantively and procedurally sound.    Notably, the ALJ rejected Judy Doty's opinion that her son belonged in a group home, observing that he drove,

---

decision and is neither new nor material to the ALJ's finding, it cannot be used to support the present argument. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993).

had attended school, and held a job (Tr. 24, 146). The ALJ also noted that despite a statement by Plaintiff's girlfriend that he needed her prompting to complete his job assignments, he had managed to work the better part of two years (with his girlfriend was absent for a least of portion of his work hours) before his termination (Tr. 145). Most persuasively, the ALJ found that Plaintiff's own testimony that he was capable of working stood at odds with his mother and girlfriend's assessments (Tr. 24, 656).

### D. The Hypothetical Question

Plaintiff next contends that the hypothetical question did not reflect his true degree of limitation. *Plaintiff's Brief* at 60-62. Citing *Varley v. Sec. of H.H.S.*, 820 F.2d 777 (6th Cir. 1987), he argues that the question did not include his learning disabilities or concentrational problems, thus invalidating the VE's finding that he could work as a packager, assembler, or office cleaner. *Plaintiff's Brief* at 61-62.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley, supra,* 820 F.2d at 779 (internal citations omitted). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human*

*Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

First, as discussed in Section **B**, *supra,* the ALJ permissibly rejected Drs. LaCombe and Mahal's finding of marked and extreme job-related limitations and was thus not required to include those findings in his hypothetical question. *Stanley, supra,* 39 F.3d at 118-119.

Second, I disagree with Plaintiff's implication that "[s]evere learning disability in math," and attention problems, should have been included verbatim in the hypothetical question. In fact, the Sixth Circuit has rejected the notion that an ailment or condition must be directly acknowledged in the hypothetical question. *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 631 -632 (6th Cir. 2004). An ALJ is not required to adhere to talismatic language in his hypothetical, provided that the question reflects a claimant's relevant limitations. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

The hypothetical question is nonetheless flawed. The administrative decision, drawing on Dr. Tien's and Dr. Walter's opinions (Tr. 344, 672) found that Plaintiff experienced moderate deficiencies in concentration, persistence, or pace (Tr. 25). However, the hypothetical question stated only that the individual should be limited to "simple work" with "limited contact with the public and peers (sic)" (Tr. 675). The question's failure to acknowledge Plaintiff's concentrational or pacing deficiencies constitutes reversible error.

Case law from this district and elsewhere suggests that the hypothetical limitations of "simple," "routine," and "low stress" may fail to account for moderate concentrational and

pacing deficiencies, reasoning that the fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job. *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich. 2005)(Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999). *See also Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir. 1996)(finding that "low stress" does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday).

Likewise here, because the hypothetical question omits any accommodation for Plaintiff's deficiencies in concentration, persistence, and pace beyond limiting him to "simple tasks," remand is appropriate. Moreover, the need for clarification is particularly critical since the VE's job findings include the positions of packager and assembler, both of which have pacing and/or quota requirements, and may be precluded as a result of Plaintiff's moderate concentrational limitations. For these reason, and because the hypothetical questions stands at odds with the ALJ's own finding of moderate concentrational limitations, a remand is required.

### E.  A Sentence Six Remand

Last, Plaintiff contends that his mother's post-administrative decision testimony should be considered. *Plaintiff's Brief* at 62; Tr. 632-640. Because he requests the consideration of material submitted after the issuance of the ALJ's decision, this argument is construed as

a request for a "Sentence Six" remand. 42 U.S.C. § 405(g). Sentence Six of 42 U.S.C.A. § 405 states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ."[6]

In *Melkonyan v. Sullivan,* 501 U.S. 89, 97-99, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991), the Court held that a Sentence Six remand (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." The court does not grant summary judgment, but merely remands for further review. *Id*. Accordingly, the court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993)   Where the Appeals Council denies a claimant's a request for a review of his application based on new material, "the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cotton* 2 F.3d at 695-96.

First, Plaintiff cannot show that his mother's July 11, 2006 deposition testimony is

_____

[6]In contrast, Plaintiff's first four arguments for remand are made under Sentence Four, 42 U.S.C. § 405(g)("[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing").

material, that is, that it would have altered the administrative decision.   One day after the

administrative hearing (June 14, 2006) Judy Doty submitted a letter on behalf of Plaintiff's

application for benefits, contending that her son's fascination with weapons, self-destructive

behavior, substance abuse, and mood swings supported his disability claim.  Her letter was

incorporated into the administrative transcript and discussed by the ALJ (Tr. 146).   Because

Mrs. Doty's July 11, 2006 deposition testimony either reiterates already-stated observations

or alludes to information found in Plaintiff's treating records, it is not material to the

administrative decision.[7]   In order for the claimant to satisfy his burden of proof as to

materiality, he must demonstrate that there was a reasonable probability that the Secretary

would have reached a different disposition of the disability claim if presented with the new

evidence.  *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th

Cir.1988).

     Second, the Sentence Six argument is undermined by the fact that Plaintiff has not

shown good cause required by § 405 for the failure to timely submit this material.  Mrs.

Doty's testimony was taken on July 11, 2006, over two months before the  September 18,

2006 administrative decision.  However, Plaintiff has offered no reason why he was unable

to submit the deposition transcript prior to the non-disability finding.

---

[7]A portion of Mrs. Doty's deposition testimony actually undermines her son's
disability claim.  She admitted that although he seemed fascinated with weapons, he had
never hurt himself or threatened others (Tr. 636).  Further, she attributed his "bizarre" grade
school behavior to the fact that staff, on occasion, had neglected to give him his medications
(Tr. 637).  Mrs. Doty also blamed a grade school teacher for either failing to timely diagnose
Plaintiff's mental problems or failing to provide him an uncluttered study area (Tr. 637).

### F.  A Remand for Further Fact Finding Consistent With This Report

As discussed in Section **D**., the ALJ's failure to craft a hypothetical question consistent with his own findings requires a remand.  However,  because proof of disability is far from "overwhelming," this oversight, while critical, is contained in an otherwise well supported decision and does not automatically entitle Plaintiff to an award of benefits.  *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).  Instead, upon review, the ALJ should be required to amend his hypothetical question to reflect his finding that Plaintiff experienced moderate limitations in concentration, persistence and pace..

## CONCLUSION

 For the reasons stated above, I recommend  that Plaintiff's Motion for Summary Judgment be GRANTED under Sentence Four to the extent that the matter is remanded  for further fact-finding; DENIED as to his request for an award of benefits; and DENIED as to his request for a Sentence Six remand.  Defendant's Motion for Summary Judgment should be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 4, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 4, 2008.

S/Gina Wilson
Judicial Assistant